Judge Mills
delivered the opinion of the court.
Dallam, the appellant, brought his ejectment against Handley, and issue being joined, on the trial, the plaintiff gave in evidence a connected plat, made out and returned by the surveyor, and proved the plat to be true. On that plat the claims of plaintiff and defendant interfering largely with each other, was laid down. He further proved the residence of the defendant on the ground in contest at the date of suit, and then produced and read his patent from the commonwealth which was dated the 14th of August, 1817, and was granted on a certificate allowed by the commissioners in 1798, and a suryey made thereon in the same, year, under the first laws appropriating the vacant lands of this state. In the patent, the plaintiff’s name stands as assignee of Thomas Taylor, assignee of Jonathan Penrod, assignee of Samuel Penrod, who was assignee of John Carver, and the certificate is No. 2759.
The defendant then read in evidence the certificate of the auditor of public accounts, by which it appeared that the claim of the plaintiff, was sold to the state, for the first instalment due thereon, in January, 1808, and so remained, till the 4th of August, 1817, when it was redeemed by paying the whole sum, due thereon, without interest pursuant to the act of assembly then in force. The defendant then read in evidence his own patent, which issued on the 17th September, 1817, on a Kentucky land office warrant, surveyed on the 22d February 1817. He then introduced a witness who proved that the defendant had lived on the land now patented to him, for nine years last past, and that he the witness had lived within one mile of the land, for 21 or 22 years—that neither Carver, the original assignor of the plaintiff’s claim nor any other person claiming under him, ever lived on the land. That about twenty-one or two years since, he bought an improvement that was made on the land, but never settled on it Upon this evidence, the defendant moved the court to instruct the jury, that the plaintiff’s patent was void, under the act of assembly. Which instructions the court gave positively, and excluded the plaintiff’s patent as evidence. The jury found a verdict accordingly, whereupon judgment was ren *419 dered, to reverse which, the plaintiff has prosecuted his appeal.
The owner of a headright claim, but on which he had not actually settled and permitted it to be sold to the state, for-non-payment of the installments cannot redeem to the injury of an actual settler who has a claim to the land by entry, survey or patent.
By the assignment of errors, the following questions arise:—Was the plaintiff’s patent void, under the facts apparent in the cause? And if it was so, was the court justifiable, as many of these facts appear by the testimony of. the defendant in assuming them as true, and giving the instruction positively. To these questions the court will respond in order.
In disposing of the vacant lands of the state, the actual settler found there, has never been considered by the legislature, as a trespasser or intruder, but has been treated as the favorite. Hence in the first law authorising commissioners to grant certificates and to adjudicate on claims, (to which class the appellant’s claim belongs) and the subsequent laws authorising the county courts to grant similar claims, actual settlement on the soil claimed was a prerequisite in every applicant. Notwithstanding it is evident from many acts of the legislature, and is perhaps now to be taken as a part of the history of the country, that these laws were abused; that the constituted authorities were imposed upon—or else grossly abused or improperly applied the law whereby many claims were granted, where actual settlement never existed, and indeed to the disturbance of actual settlers. The state price on many of the claims unpaid, to coerce which payment a forfeiture was first imposed in case of failure; and ultimately a sale, either to individuals, or in case of no bidders, to the state. By this means many claims were forfeited, and more were sold to the state, and left to the future disposition of the legislature. Time was given frequently to redeem, and in case of a total payment in a limited time, without interest. The legislature aware of the advantage it possesed over those claims forfeited for non-payment, or for a failure to redeem, and which had been granted in fraud of the law, and knowing that if redeemed, they might oust the actual settler, who contributed to the strength of the state, ultimately determined to strip such claims, when redeemed, of their dignity and priority, and to render them at the time of redempton, harmless as to him, who cultivated, or originally had settled on the soil—and provided that if they were redeemed, they should not acquire, thereby, the grade which they previously held, when residence on the soil might be disturbed. The provisions on this subject will be noticed by *420 the court in the order of time, in which they appear in our code. The first will be found in 5 Litt. 88; in one of the acts granting indulgence, and authorising redemption, passed at the session of 1813, and provides—“That no persson “or persons, other than an actual settler, shall be authorised “to redeem land which has been forfeited to the commonwealth, for a failure to redeem the same, within the time “authorised by law, so as to give him, her or them every “right, title or claim to the same, when it shall interfere “or conflict with the survery of a person actually settled on “the land, or seminary claim, or any other claim entered, “surveyed or patented; and should a grant issue, it shall be void, so far as it does so interfere ”
A similar provison will be found in the indulgence act, of 1814, 5 Litt 144—differing only in a few clauses, from the one first recited, the most remarkable of which is, the expressions, “which have beeen forfeited to the commonwealth, for a failure to pay the same,” instead of failure “to redeem the same,” used in the first recited act, and leaving out the words contained in the first recited section “or “any other claim, entered, surveyed or patented.” But the legislature did not let this section remain in this incomplete state till the close of the session; for they afterwards passed a subsequent and supplemental act, of one section, designed evidently, to render more strong, and efficicient, the section last recited, which will be found in 5 Litt. 289. This inserts the words, “for a failure to redeem the same;” also the words, “or any other, claim entered, surveyed or patented;” and also adds the expressions, “nor with any claim whatever, which has been previously redeemed and the instalments due, paid thereon, or with an actual settler on va-"cant land, nor with any person whatever, who has improved, or is cultivating vacant land, adjoining the land “he lives on.” The last provision, which will be noticed by the court, is contained in the indulgence act of the session 1815, 5 Litt. 313. This is substantially the same with some of the provisions already recited. It however leaves out some of the cases provided for in the foregoing provisions. But as neither of these acts, contain any repealing clause, after the provisions which one contains, are not contradictory to, but consistent with, and additional to those of the others, from which they vary, it seems to the court, that like all other acts, in pari materia, each ought to be allowed to stand in force, and remain obligatory, and *421 that in their turns, they will comprehend and restrain future redemptions, unless such future redemptions allowed by subsequent acts, should be permitted on terms, inconsistent with, and repugnant to their provisions. No such provisions for redemption have been found by the court. Indeed the act last recited, was prolonged by an act of the succeding session of the legislature, and under its provisions, the appellant whose claim had been sold to the state for the first enstalment exercised the right of redemption.—The question then arises, are the parties in this case, according to the evidence produced within the provisions of the acts recited, so that the grant of the plaintiff, might be pronounced void? Is the plaintiff in such a situation that his grant can be questioned in a court of law, and the defendant in a situation thus to question it?
The plaintiff, to entitle him to redeem, and obtain a valid grant against persons of a certain description, must be an actual settler, according to the laws above recited.—What kind of an actual settler he must be, is a question of some difficulty, and may in its ultimate decision materially affect the rights of individuals, who redeem. Must he be an actual settler, when be obtained his certificate or at the passage of the act allowing redemption- or at the hour of redemption-or at the time his adversary acquires his claim, or makes his settlement on the land so as to dispute the right with him? The court does not deem it necessary to solve this difficulty, and now to determine at which of these periods, the plaintiff must be an actual settler; and will leave it till a case occurs, directly requiring the decision to take place For in this case, if the proof is to be believed, the appellant was not a settler at either of the periods above mentioned. Neither he nor his assignors under whom he claims, was settled on the land at the date of his certificate or at any other period, from that day till the trial in the court below. It is evident then that his grant may be questioned, if his adversary occupies the ground, authorising him to join in combat with the plaintiff. It is manifest from the proof, that he was the first settler on the land, and had lived therein nine years previous to the trial. Whether he was “an actual settler on vacant land” according to the expressions of one of the acts above alluded to, so as to entitle him by that act, per se, to question the plaintiff’s grant, we need not now determine; for he had a survey made on the land, at the time his adversary redeemed, so *422 that he is characterised by the letter of the acts, or some of them above recited. His survey, was the survey of “a person actually settled on the land” or he had a claim “surveyed,” and the expressions of the acts recited, are “any other claim entered, surveyed or patented.” He of course, by the expressions of the acts is included.
If a patent issuses on such a redeemed headright, so interfering with the claim of another it is void
But it has been urged in argument, that the claim of the defendant is a Kentucky land office warrant, first authorised by the act of February 6, 1815, entitled “An act appropriating the vacant lands in this commonwealth.” 5 Litt. 266. And that that act did not authorise claims, emanating under its authority, to enter the lists with those which had originated under previous laws—and that the bare fact of priority, in point of time, is sufficient to silence such claims when they attempt to interfere with prior claims. This argument has been deemed of great weight by the court, and there is some difficulty in not admitting its correctness, and allowing its force to be available when applied to the present controversy. It is based on the 10th section of the act last named, and is as follows: “And for “quieting litigation, be it further enacted, that all entries, “heretofore made, and all titles founded upon surveys heretofore made, which, by the laws at the time being, were authorised to be made, should be deemed superior to surveys made upon warrants obtained by virtue of this act, “notwithstanding any alledged vagueness in the entries or “certificates on which surveys were founded, and notwithstanding such surveys may not be made conformable to “entry; and that no lands shall be subject to appropriation “under the provisions of this act, that hath reverted to the “commonwealth by escheat, or for non-payment of the tax “or taxes due thereon, or for a failure to enlist the same for “taxation, or for any forfeiture that may have happened from a failure to pay the instalment or instalments due “thereon prior to the passage of this act; and that no lands “are to be appropriated by this act, to which the Indian “claim is not extinguished.” The legislature does seem, in this section, to have intended that the Kentucky warrant system should be one sui generis, and that the bare fact of priority in other claims should give them the ascendency, when drawn into contests with a warrant-survey. But when it is seen that in the same act a preference is given to a settler, and the right of pre-emption allowed him—that only two days afterwards they passed a law postponing the *423 redemptioner who had paid nothing, to even a colorable claim, if he was not himself an actual settler, and by a proviso in the same law, shewed that they did not intend to authorise a settlement on lands partially paid for, so as to destroy the right of redemption; and finally, that the very words and letter, as well of that act, as the one passed the succeeding year, under which the appellant had redeemed, having theretofore made no payment, does include the case of a land office warrant, if its possessor has settled on the land within his survey, and constrains the court to say that his is the case of a survey of a person actually settled on the land; and that this class of claims may come so far into competition with other claims as to contest the validity of a redeemed claim, where its owner had not settled himself upon it, or paid any part of the state price. So far, then, this court agrees with the court below. And if the facts proved, could be taken as true, that court did right in declaring the patent of the plaintiff void.
A defendant may successfully move the cr't for peremtory instruction to the jury, plaintiff’s evdence alone, and admits every fact that plaintift’s evidence conduces to prove, or he may himself mingle rec’rd evidence, or undisputed written evidence.
But it is objected, that the instruction is positive, assuming every fact as incontestible, when it ought to have been hypothetical, leaving the jury to determine the truth of the facts. We would always disturb the decision of an inferior court reluctantly, when we concur in the legal principles on which it is founded, barely on account of the manner in which the opinion below was given. But in this case we cannot get over this objection. It is a rule, that a party may move upon the evidence of his antagonist, assuming that evidence, and every fact which it conduces to prove as true, and ask the court for a positive instruction. But he cannot make such a motion on his own evidence alone, or on his own evidence mingled with, or added to, that of the opposite party, unless his own evidence is composed of record or incontested official documents or writings.
In the present case the plaintiff had given, by his evidence, grounds for the defendants motion. He had proved the residence of the defendant on the land at the commencement of the suit. He had, by proving the connected plat, filed in the cause, to be true, proved the existence of the defendant’s survey on the ground. The defendant gave in evidence his own patent, and the auditor’s certificate, shewing the sale of the plaintiff’s claim for the first, instalment, and the redemption thereof. So far the evidence appears to come within the rule of a positive i *424 nstruction. But this was inadequate to authorise the instruction given. The attitude of the plaintiff as an actual settler, or not, had to appear by parol evidence on the part of the defendant, which, the plaintiff had a right to contest before the jury. For the defendant had to shew that the plaintiff was not such an actual settler as entitled him to redeem without prejudice to his claim, whensoever that actual settlement was to have taken place. Now, as he bad to shew, and did shew this, by his own proof, and that by the swearing of witnesses, which the plaintiff had a right to dispute-the court below erred in assuming these facts as true, and thereupon pronouncing the plaintiff’s patent void, and excluding it from the jury, when such instruction ought to have been predicated on the supposition, that the jury should be satisfied of these facts. For this cause the judgment of the court below must be reversed, and the cause remanded for new proceedings, not inconsistent with this opinion.
But it is error to give peremptory instructions on motion of a defendant when he has introduced evidence of a parol chapter, plaintiff has a right to controvert this, and the instructions should be hypothetical.
Bibb for appellant, Wickliffe for appellee.